Habold J. Hughes, J.
Petitioners in these four proceedings are employed by the State of New York in permanent positions in the competitive class of the State’s civil service. They were notified, on or about April 29,1972, that the Director of Employee Relations had determined that they had engaged in a strike (apparently on April 1 and 2, 1972) in violation of subdivision 1 of section 210 of the Civil Service Law. The notice advised that the penalties for such violation included probation for a period of one year following the determination and the loss of two days ’ salary for each day’s violation. Employees receiving such notice could contest the Director’s determination by filing, within 20 days, an affidavit stating facts showing that such determination was incorrect. Each of the petitioners herein filed an affidavit contesting the Director’s determination. Three of them have been notified that they would be accorded a hearing, at a time and place to be fixed later, on the factual issues raised by their affidavits. The fourth, petitioner Godbee, has been denied a hearing, on the ground that his affidavit failed to establish that he did not violate the statute. Each petitioner has been on probation since the date of the Director’s initial determination, and each has had the monetary penalty deducted from his or her salary.
*835 In these proceedings, initiated pursuant to article 78 of the CPLR on behalf of themselves and all other employees similarly situated, petitioners seek judgment annulling the Director’s April 29, 1972 determination and declaring that subdivision 1 and paragraphs (b), (d), (e), (f) and (h) of subdivision 2 of section 210 of the Civil Service Law are unconstitutional.
Respondents have moved to dismiss these four petitions (which are identical in many respects), on three grounds: first, that they fail to state grounds for relief; second, that petitioners failed to exhaust their administrative remedies; and third, that these proceedings cannot be maintained as a class action.
Subdivision 1 of section 210 of the Civil Service Law proscribes strikes by public employees and subdivision 2 provides for the imposition of certain penalties, including probation for a term of one year and payroll deductions in an amount equal to twice the employee’s daily rate of pay for each day’s violation (pars, [a], [f] and [g]). The initial determination as to whether a violation of the statute occurred, the employees who committed such violation and the dates thereof, is made by the chief executive officer of the government involved, which in these cases was the Governor, acting through his Director of Employee Relations (subd. 2, par. [d]). Employees initially found guilty of violating the statute are entitled to notice of such determination and of their right to object (subd. 2, par. [e]), but the period of probation commences immediately and payroll "reductions may be effected prior to any hearing on the employee’s objection (subd. 2, pars, [f], [g] and [h]). If the initial determination is reversed upon an employee’s objection, tenure is restored and payroll deductions refunded.
Employees contesting the initial determination are not entitled to a hearing in every case; the chief executive officer may dismiss objections if he finds that the employee’s affidavit and supporting proof ‘ ‘ fails' to establish that the employee did not violate this subdivision ” (subd. 2, par. [h]). Under the statute (subd. 2, par. [b]), any employee who is absent from work without permission while a strike is in progress shall be presumed to have engaged in such strike.
Petitioners allege that they have been denied due process in that they were not afforded an opportunity to be heard prior to the imposition of the statutory penalties of loss of tenure and a fine. They further allege that subdivisions 1 and 2 of section 210 of the Civil Service Law are unconstitutionally vague and discriminatory. Respondents contend that these constitutional claims have been litigated in the courts of this State and in the Supreme Court of the United States and in all instances the *836 validity of the statute has been upheld (citing Matter of Lawson v. Board of Educ. of Vestal Cent. School Dist. No. 1, 62 Misc 2d 281, affd. 35 A D 2d 878, app. dsmd. 28 N Y 2d 993, app. dsmd. 404 U. S. 907; Matter of Zeluck v. Board of Educ. of City School Dist. of New Rochelle, 62 Misc 2d 274, affd. 36 A D 2d 615, app. dsmd. 29 N Y 2d 749; Matter of Buffalo Teachers’ Federation v. Helsby, 35 A D 2d 318).
A reading of the opinions and decisions in these cases supports respondents’ assertion. In Lawson and Zeluck, the courts considered and rejected the argument that subdivision 2 of section 210 is unconstitutional because it permits the imposition of penalties without a prior hearing. In Matter of Buffalo Teachers’ Federation, the court held (p. 322): “ The provisions of the statute setting forth the procedures applicable to strikes by public employees and employee organizations are clear and definite, and the claim that they are vague is without merit. The Court of Appeals has held that the prohibition against strikes by public employees or employee oragnizations does not violate the equal protection clause of either the United States or the New York State Constitution. (Rankin v. Shanker, 23 N Y 2d 111; City of New York v. De Lury, 23 N Y 2d 175.)
Normally, such precedent would foreclose further judicial inquiry as to the validity of the statute. However, the concept of due process is not static, but expanding, as witnessed by the United States Supreme Court’s most recent pronouncement in Fuentes v. Shevin (407 U. S. 67) striking down the prejudgment replevin laws of Florida and Pennsylvania as violative of the due process clause of the Fourteenth Amendment since no hearing was afforded to the possessor prior to seizure of the goods. Mr. Justice Stewart’s opinion states that: “ The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions * * * If the right to notice and hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual’s possessions can be returned to him if it was unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. ‘ This Court has not * * * embraced the general proposition that a wrong *837 may be done if it can be undone. ’ Stanley v. Illinois, 405 U. S. 645, 647.” (Fuentes v. Shevin, supra, pp. 80-82).
The court’s interpretation of its prior opinions in this area is illuminating. “ This is no new principle of constitutional law. The right to a prior hearing has long been recognized by this Court under the Fourteenth and Fifth Amendments. Although the Court has held that due process tolerates variances in the form of a hearing ‘ appropriate to the nature of the case, ’ Mullane v. Central Hanover Tr. Co., 339 U. S. 306, and ‘ depending upon the importance of the interests involved and the nature of the subsequent proceedings [if any] ’ Boddie v. Connecticut, 401 U. S. 371, 378, the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect. E.g., Bell v. Burson, 402 U. S. 535, 542; Wisconsin v. Constantineau, 400 U. S. 433, 437; Goldberg v. Kelly, 397 U. S. 254; Armstrong v. Manzo [380 U. S. 545], at 551; Mullane v. Central Hanover Tr. Co., supra, at 313; Opp Cotton Mills v. Administrator, 312 U. S. 126; United States v. Illinois Cent. R. Co., 291 U. S. 457; Londoner v. City & County of Denver, 210 U. S. 373, 385-386. See In re Buffalo, 390 U. S. 544, 550-551. ‘ That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event ’. Boddie v. Connecticut, supra, at 378-379 ”. (Fuentes v. Shevin, supra, p. 82; emphasis in original.)
The Fuentes opinion settled the debate whether the right to a prior hearing would be limited to “special property” or necessities. “ The Fourteenth Amendment’s protection of ‘ property ’ * * * has been read broadly to extend protection to ‘ any significant property interest ’, Boddie v. Connecticut, supra, at 397, including statutory entitlements. See Bell v. Burson, supra, at 539; Goldberg v. Kelly, supra, at 262 * * * While Sniadach [Sniadach v. Family Finance Corporation, 395 U. S. 337] and Goldberg emphasized the special importance of wages and welfare benefits, they did not convert that emphasis into a new and more limited constitutional doctrine. Nor did they carve out a rule of ‘ necessity ’ for the sort of nonfinal deprivations of property that they involved. That was made clear in Bell v. Burson [supra], holding that there must be an opportunity for *838 a fair hearing before a mere suspension of a driver’s license,” (pp. 86, 89).
Clearly, then, the loss of tenure and salary would constitute the deprivation of an interest encompassed by the Fourteenth Amendment’s protection (cf. Board of Regents v. Roth, 408 U. S. 564, decided June 29,1972).
The Fuentes court admitted that a person need not be given an opportunity to be heard before he is deprived of his property under special circumstances, but severely curtailed that exception. “ There are ‘ extraordinary situations ’ that justify postponing notice and an opportunity for a hearing. Boddie v. Connecticut, supra, at 379. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second,- there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force; the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.” (pp. 90-91).
Subdivision 2 of section 210 does not meet this three-pronged test. While the prohibition against strikes by public employees effectuates a valid State policy (City of New York v. De Lury, 23 N Y 2d 175, supra), the statutory system of enforcement was obviously prompted by the desire for administrative convenience rather than a special need for very prompt action.
It now appears, therefore, that the system of review by objection, insofar as it fails to provide for an opportunity for a hearing before the imposition of the statutory penalties, is inadequate to satisfy the requirements of due process. Accordingly, respondents’ motions to dismiss the petitions for failure to state grounds for relief must be denied.
Lest this court’s holding be misconstrued, it should be observed that the recent decisions of the Supreme Court in no way affect the State’s authority to prohibit strikes by public employees or to punish violations by administrative action. All that is required is that the imposition of the statutory penalties be postponed until employees charged with violating the statute have had an opportunity to file objections to the employer’s initial determination, and, if objections be filed, until a hearing is had upon the issues raised.
*839 It also appears that the provision in subdivision 2 permitting the employer to unilaterally dismiss an employee’s objection without a hearing is violative of the requirement of notice and an opportunity to be heard.
Respondents next contend that these petitions must be dismissed as premature because petitioners have failed to exhaust their administrative remedies. This is simply the first argument restated, since it assumes that the statutory system of review by objection satisfies the requirement of due process.
Petitioner Godbee, of course, is entitled to judicial review of the dismissal of his objeción without a hearing under the statute as it now reads (§ 210, subd. 2, par. [h]). The motions to dismiss the proceedings as premature should be denied.
Respondents’ final contention is that these proceedings may not be maintained as class actions. Petitioners herein seek to sue on behalf of themselves “ and approximately seven thousand five hundred other civil service employees of the State of New York ’ ’ who received notices dated April 29,1972 from respondent Director of Employee Relations.
As the Court of Appeals explicitly announced in Gaynor v. Rockefeller (15 N Y 2d 120, 129): “ a class action may not be maintained where the wrongs asserted are individual to the different persons involved and each of the persons aggrieved ‘ may determine for himself the remedy which he will seek ’ and may be subject to ‘ a defense not available against others ’ ’ ’.
Here, an alternative remedy (albeit inadequate) is available under the statute to those members of the alleged class who have filed timely objection to the initial determination, and they should not be forced into the procedural framework selected by these petitioners. More importantly, many members of the alleged class filed no timely objection to the initial determination and thus may be subject to a defense not available against those who contested the Director’s decision and demanded a hearing.
Therefore, so much of respondents ’ motions as seek to dismiss the petitions on behalf of all others similarly situated are granted, and in all other respects the motions to dismiss are denied, all without costs. Respondents’ time to serve answers to the petitions is extended to 15 days following service of the orders to be entered hereon with notice of entry.