OPINION OF THE COURT
Lawrence J. Bracken, J.
This CPLR article 78 proceeding seeks a judgment:
“(a) declaring that respondent District has acted illegally, arbitrarily, capriciously and in excess of its constituted authority in unilaterally establishing on or about January 17, 1980 a timetable for recovering the tax payments it had made improperly from its own revenues on behalf of petitioner and the others without withholding monies from their salaries as required by law;
“(b) declaring that respondent District has acted illegally, arbitrarily, capriciously and in excess of its constituted authority in deducting from the salaries of petitioner and the others since on or about February 1, 1980, without their agreement or a court order, monies equal to the tax payments it had made improperly from its own revenues rather than through withholding as required by law;
“(c) ordering respondent District to make petitioner and the others whole for the sums illegally deducted from their salaries since on or about February 1, 1980”.
*951 The matter in controversy involves the deducting from the teachers’ salaries the penalties, together with certain withholding tax payments, allegedly accruing by virtue of a certain strike by the teachers of the said respondent, school district, in the fall of 1979.
Pursuant to the applicable regulations of the Internal Revenue Service, such penalties are deemed income and the withholding tax provisions apply (Phillips v New York City Health & Hosps. Corp., 58 AD2d 768, affd 44 NY2d 807). Such withholding from compensation is established as one additional day for every day of strike; such withholding is to be deducted only during the 30- to 90-day period after there is a determination of violation of the applicable statute (see Matter of St. Pierre v Board of Educ., 40 AD2d 71, which held that the date of the determination should be the date of notification; see, also, Matter ofDe Lury v Beame, 49 NY2d 155, which held that section 210 [subd 2, par (e)] of the Civil Service Law requires notification forthwith, after determination and identity and names of employees are ascertained).
The statute further provides that the penalty must be deducted from the gross pay of the subject employee and further mandates that the deduction must be made within the said 30- to 90-day calendar period pursuant to section 210 (subd 2, par [g]) of the Civil Service Law, which provides: “Payroll deductions. Not earlier than thirty nor later than ninety days following the date of such determination, the chief fiscal officer of the government involved shall deduct from the compensation of each such public employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision”.
This court initially determines that the continuance of a strike past the 29th day of determination does not in any way toll the commencement of the 30- to 90-day calendar period as prescribed by statute and which tolling would in effect extend the maximum penalty to be imposed; nor is it mandated that the deduction be made at the earliest possible poststrike date. In addition, the statutory provisions do not define payroll period as against *952 payroll date for the purpose of determining the earliest and latest days upon which a penalty may be collectible.
At the request of this court a supplemental affidavit of one William Hall, sworn to January 21, 1981, was filed on behalf of the respondents, together with copies of the notices of the total strike days subject to deduction to petitioner Tepper, and a copy of a portion of a certain handwritten note of unknown authorship, which note involved the apparent contractual agreement to pay the sum of $350 to certain “teachers employed at 12115179” (emphasis supplied).
In the respective notices of determination dated October 10, November 14 and November 16, 1979, the dates of October 8, November 6 and November 12 were not classified as strike days and the total strike days as indicated in the aforesaid notices consisted of 41 days.
In his original affidavit, sworn to November 19, 1980, which said affidavit was submitted on behalf of the respondents, the said William Hall, the Assistant Superintendant of Schools, alleges as follows: “The first payroll period after the strike was 11/21/79. Since this fell within the 30 days for which there was no statutory prohibition for which wages could be paid and no penalty deducted, he earns his normal wages, less standard deductions (Exhibit No. III(A), line 8).”
In his supplemental affidavit Hall acknowledges that there is a typographical error in line 8 of Exhibit No. III(A) and avers that the payment made November 21, 1979 was for five school/vacation days (November 19, 20, 21, 22 and 23) and also included the special stipend of $350. The petitioner, who received said payroll check of November 21, 1979, summarizes his contentions in a memorandum in support of the petition as follows: “Respondents began deducting the penalty from the paycheck issued to Tepper on December 7, 1979, since according to the affidavit of Assistant Superintendent of Schools William Hall (submitted by respondents), the check issued on November 21 fell within the 30-day period when no penalties may be deducted.”
*953 The documentation presented by the parties indicates the following critical dates:
School Days Determination Date 30th Day After 90th Day After
Penalties Determination Determination
15 October 10, 1979 November 8, 1979 January 7, 1980
24 November 14, 1979 December 13, 1979 February 11, 1980
2 November 16, 1979 December 15, 1979 February 13, 1980
The last day of the strike was November 16, 1979. Accordingly, both the complete penalty and the required tax withholding could have been collected within the 30-to 90-day window period after the respective determinations (supra), except for the fact that the respondents made the payment of November 21, 1979, covering the afore-mentioned poststrike five school/vacation days, together with the special stipend of $350.
There is no question that the timing of the determinations and the end of the strike period could have resulted in deducting from compensation, within the 60- to 90-day calendar periods applicable to said determinations, the full penalty, withholding taxes and Federal Insurance Contributions Act deduction. In fact, however, the implementation of the statutory period was delayed by the failure to deduct any penalty from the payroll of November 21, 1979, which was the 14th day of the 60- to 90-day calendar period as determined by the notice of October 10, 1979.
This court determines, therefore, that the delay in commencing deductions for penalties did not extend the time after the said 90-day statutory period for the allowing of any deductions such as withholding taxes, since the respondent was under no restraint to delay commencement of the deductions until December 7, 1979.
In the face of a long strike, multiple determinations enable the public employer to threaten equally long periods without pay after the strike, notwithstanding the 90-day limitation of subdivision 2 of section 210 of the Civil Service Law. The key is that with staggered determinations the public employer can create staggered statu *954 tory 60- to 90-day periods; this results in a maximum of 43.57 school days subject to collection for each window period.
The following is a recapitulation of the poststrike period payroll dates and the withholding made by respondents:
PAYROLL DATE WITHHOLDING
December 7 10 days — October 10, 1979 determination — penalty
December 21 5 days — October 10 determination — penalty
5 days — November 14 determination — penalty
January 4 10 days — November 14 determination — penalty
January 18 9 days — November 14 determination — penalty
1 day — November 16 determination — penalty
February 1 1 day — November 16 determination
* + $698.61 withholding taxes on 21.23 penalty days x $32,908.
This represents balance of total gross payroll.
February 15 ** $650.60 withholding taxes on 19.77 penalty days x $32,908.
*Total withholding for táxes $1,349.21 41 days = $32.908 withholding for taxes for each penalty day.
The February 1, 1980 payroll covered the following 10 school/holiday/vacation days — January 21, 22, 23, 24, 25, 28, 29, 30, 31 and February 1. The February 15, 1980 payroll covered the following 10 school/holiday/vacation days — February 4, 5, 6, 7, 8, 11, 12, 13, 14 and 15.
The 90th day after the October 10, 1979 determination, covering 15 penalty days, was January 7, 1980, and accordingly the respondent school district was prohibited from deducting or withholding taxes applicable to the 15 penalty days. The petitioner is entitled to be reimbursed the sum of $493.62 ($32.908 x 15) applicable to said 15 penalty days, which sum this court calculates as the last portion of the $650.60 representing withholding for taxes for 19.77 days (February 15, 1980 payroll). The remaining $143.02 of the February 15, 1980 payroll withholding represented withholding for 4.77 days, which covered a portion of the November 14, 1979 notice (2.77 days) and all of the November 16, 1979 notice (2.00 days). f.
*955 February 4, 5 and 6, 1980 — three payroll accrual days — were prior to the 90th day of the November 14, 1979 and the November 16, 1979 determinations and the respondents properly withheld taxes for the 4.77 days in the February 15, 1980 payroll. This court holds that the 90th day for deduction of penalty and withholding is based upon accrued payroll days and not the date of the biweekly payroll check or delivery thereof to the employee (cf. Matter of Tenney v Rockefeller, 71 Misc 2d 643).
This court declares that the respondent school district acted in excess of its constituted authority in deducting from the February 15, 1980 payroll withholding for taxes applicable to 15 penalty days covered by the October 10,
1979 notice.
Accordingly, the respondent is directed to reimburse all striking teachers for any withholding on the February 15, 1980 payroll for the 15 penalty days relating to the 15 strike days included in the October 10, 1979 notice.