OPINION OF THE COURT
Wachtler, J.
The Taylor Law (Civil Service Law, § 210) provides that if public employees have engaged in a strike the chief executive officer of the governmental unit involved may make salary deductions from the compensation of those employees who participated in the strike. The deductions must be made not earlier than 30 days nor later than 90 days following the date of the chief executive officer’s "determination”. The question presented on this appeal is the fixing of the time when such a "determination” is deemed to have been made.
On October 10, 1975 a report was submitted to the Mayor of the City of New York advising him that on five occasions between June 27 and July 2, 1975, up to 5,518 members of the New York City sanitation workers’ union engaged in a job action against the city. The employees on those occasions did not report for work, or refused to take out the trucks, and picketed or otherwise blocked access by private garbage haulers to city-owned landfill sites.
On October 10, 1975 in furtherance of this report to the Mayor, and pursuant to subdivision 2 of section 210 of the Civil Service Law, sanitation men who had violated the Taylor Law, except the 370 petitioners in this action, were personally served with notice of the determination of their violation, the penalties to be applied, and their right to object to the determination. On March 17, 1976 the Commissioner of Sani *158 tation sent a teletype message to all work locations within the department that "[Duplicate notices of violation of the Taylor Law will be distributed to 370 sanitationmen who for one reason or another were not yet served.”
These 370 sanitation men commenced this proceeding arguing successfully before Special Term and the Appellate Division that the city was time-barred from imposing the payroll deduction. Both courts held that a "determination” that a strike had occurred in June and July of 1975 as well as the number of participants on each day of the strike had been made on October 10,' 1975. The courts also held that the statute was "explicit” in barring deductions "later than 90 days after the 'determination’ not after notice of the determination” and that section 210 (subd 2, par [g]) of the Civil Service Law required that the 90 days within which payroll deductions must be made be computed from the October 10, 1975 determination rather than from the date the notices were personally served. On this reasoning the period for assessing penalties would have expired on January 8, 1976.
The issue presented is the statutory interpretation of a part of section 210 of the Civil Service Law which provides that no public employee or organization shall engage in, cause, instigate, encourage, or condone, a strike (subd 1). Subdivision 2 of the statute states that any public employee who does engage in a strike violates the subdivision. It is paragraphs (d), (e) and (g) which are directly at issue. They read as follows:
"(d) Determination. In the event that it appears that a violation of this subdivision may have occurred, the chief executive officer of the government involved shall, on the basis of such investigation and affidavits as he may deem appropriate, determine whether or not such violation has occurred and the date or dates of such violation. If the chief executive officer determines that such violation has occurred, he shall further determine, on the basis of such further investigation and affidavits as he may deem appropriate, the names of employees who committed such violation and the date or dates thereof. Such determination shall not be deemed to be final until the completion of the procedures provided for in this subdivision.
"(e) Notice. The chief executive officer shall forthwith notify each employee that he has been found to have committed such violation the date or dates thereof and of his right to object to such determination pursuant to paragraph (h) of this subdivi *159 sion; he shall also notify the chief fiscal officer of the names of all such employees and of the total number of days, or part thereof, on which it has been determined that such violation occurred. Notice to each employee shall be by personal service or by certified mail to his last address filed by him with his employer.
* * *
"(g) Payroll deductions. Not earlier than thirty nor later than ninety days following the date of such determination, the chief fiscal officer of the government involved shall deduct from the compensation of each such public employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision; such rate of pay to be computed as of the time of such violation. In computing such deduction, credit shall be allowed for amounts already withheld from such employee’s compensation on account of his absence from work or other withholding of services on such day or days. In computing the aforesaid thirty to ninety day period of time following the determination of a violation pursuant to subdivision (d) of paragraph two of this section and where the employee’s annual compensation is paid over a period of time which is less than fifty-two weeks, that period of time between the last day of the last payroll period of the employment term in which the violation occurred and the first day of the first payroll period of the next succeeding employment term shall be disregarded and not counted.” (Emphasis added.)
Subdivision (h) allows for the filing of objections by the employees which may be dismissed or sustained by the chief executive officer subject to CPLR article 78 review.
The statute provides for a two-stage initial determination. First the chief executive officer must determine that there has been a violation; second, he must then determine the names of the violators and the dates of the violations. This two-part determination becomes final if the employee does not file an objection or, if objections have been filed, all applicable procedures have been completed (see Matter of Sanford v Rockefeller, 35 NY2d 547, 553-554, app dsmd 421 US 973). By imposing this requirement the Legislature apparently intended some form of notice prior to the imposition of penalties. Indeed it imposed a 30-day waiting period before deductions could be made so that employees would have an opportunity to object *160 before the imposition of penalties (Matter of St. Pierre v Board of Educ., 40 AD2d 71, 73).
The plain language of the statute is to the effect that the "determination” identify the strikers by name. The "determination” of October 10, 1975 did not become final as to these 370 strikers until they were identified by name by the chief executive officer or provided with notice of their violation. Therefore the October 10 date was an improper basis for measurement of the 30- to 90-day time period.
Lest our holding be understood to countenance any unreasonable delay by the municipality in giving the required notice, we note that the statute requires that after the names of the individual strikers have been ascertained notice shall be given "forthwith” (Civil Service Law, § 210, subd 2, par [e]). However, we need not in this case decide whether the city’s actions comported with that requirement, as this issue was not raised.
The order appealed from should be reversed and the petition dismissed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order reversed, with costs, and the petition dismissed.