Thomas FLOYD, et al.

v.

Charles E. SMITH, Commissioner of Education for the State of Tennessee.

No. CIV–3–92–608.

United States District Court, E.D. Tennessee, at Knoxville.

March 12, 1993.

Maurice K. Guinn, Gentry, Tipton, Kizer & Little, P.C., Knoxville, TN, Michael P. Farris, Jordan W. Lorence, Home School Legal Defense Ass'n, Paeonian Springs, VA, for plaintiff.

Jane W. Young, Asst. Atty. Gen., State of Tenn., Nashville, TN, George H. Buxton, III, Buxton & Wilkinson, Oak Ridge, TN, for defendants.

## ORDER

HULL, District Judge.

This is a civil rights action, 42 U.S.C. § 1983, brought by parents who lack bachelor's degrees but who, nevertheless, school their 9–12th grade children at home. They challenge the constitutionality of Tenn.Code Ann. § 49–6–3050(b)(7)[1], which requires parents to have a bachelor's degree or a statutory exemption in order to home school their own children beyond the 8th grade. They also challenge the actions of Charles E. Smith, Commissioner of Education, for his blanket policy of refusing virtually all applications for a statutory exemption, including their own. The case is now before the Court on the Commissioner's motion to dismiss on the grounds of *res judicata,* collateral estoppel, and/or failure to state a claim. [Doc. 16].

In support of his motion, the Commissioner advises the Court that the claims asserted in this action have already been unsuccessfully advanced in an earlier Tennessee state court action, *Crites et al. v. Charles E. Smith, et al.,* Davidson County Chancery Court No. 89–2824–I. Two of the named plaintiffs in this action as it was originally filed, Paul and Claudia Williams,[2] were also plaintiffs in the prior state court action. All of the plaintiffs in the prior action were represented by the Home School Legal Defense Association, the same organization which represents the plaintiffs in the instant case. In both lawsuits, the plaintiffs sought a declaratory judgment that Tenn.Code Ann. § 49–6–3050(b)(7) was unconstitutional as applied, together with related injunctive relief. They also challenged the Commissioner's arbitrary denial of statutory exemptions or waivers.

1. The statute provides:

(b) A parent-teacher conducting a home school must comply with the following requirements:

. . . . .

(7) Possession of at least a baccalaureate degree awarded by a college or university accredited by an accrediting agency or association recognized by the state board of education, by a parent-teacher conducting classes in grades nine (9) through (12). A parent-teacher may request an exemption from this requirement from the department of education on a year-to-year basis.

2. The plaintiffs filed a notice of the voluntary dismissal of these plaintiffs [Doc. 19], after the Commissioner had filed his motion to dismiss.

■ The Commissioner contends that because all the claims advanced in this action were, or reasonably could have been, advanced by the plaintiffs or their "virtual representatives" in the prior action, this case is barred by the doctrine of *res judicata*. Under the full faith and credit statute, 28 U.S.C. § 1738, this Court must give the *Crites* judgment the same preclusive effect it would have under state law. Under Tennessee law, the doctrine of *res judicata* stands as an absolute bar to a subsequent suit between the same parties or their privies upon the same cause of action. *Shelley v. Gibson*, 218 Tenn. 1, 7, 400 S.W.2d 709 (1966). The defense of *res judicata* is established where it is shown that a prior judgment was rendered on the merits by a court of competent jurisdiction and where the same parties, or their privies, and the same cause of action are involved in the subsequent lawsuit. *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn.App.1990).

■ The Court is satisfied that the *Crites* decision was rendered on its merits by a court of competent jurisdiction and that it involved the "same cause of action" within the meaning of *Lee, supra*. The real question is whether or not sufficient privity exits between the plaintiffs in this action and those in the *Crites* case to justify barring the present lawsuit. The Commissioner refers the Court to the case of *N.A.A.C.P. v. Hunt*, 891 F.2d 1555 (11th Cir.1990), as one very nearly on point with the case at hand. In that case, the N.A.A.C.P. and several of its individual members filed a federal court action seeking a declaratory judgment that flying the Confederate flag from the Alabama capitol dome violated the U.S. Flag Code and the First, Thirteenth and Fourteenth Amendments to the Constitution. One of the individual plaintiffs, Alvin Holmes, had filed an earlier federal court action, *Holmes v. Wallace*, 407 F.Supp. 493 (M.D.Ala.1976), making all of these claims except the First Amendment claim. The district court in the *N.A.A.C.P.* case dismissed on the ground of *res judicata* all claims raised in the prior action (but not the First Amendment claim). The Eleventh Circuit held the entire action barred, including the First Amendment claim, because, for *res judicata* purposes, the "identity of the parties" included both those who were actual parties in the original action (Mr. Holmes) and those person in privity with him. It defined privity as

> "a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." ... Privity exists where the nonparty's interests were represented adequately by the party in the original suit.... Privity also exists where a party to the original suit is "so closely aligned to a nonparty's interest as to be his virtual representative." (citations omitted) 891 F.2d at 1560–61.

The Commissioner argues that, by the *N.A.A.C.P.* test, the plaintiffs in *Crites* were the virtual representatives of the plaintiffs in the instant action. To hold otherwise would permit the Home School Legal Defense Association to continue to bring repetitious actions challenging the same home schooling statute by simply changing the nominal plaintiffs and making insignificant changes in their legal theories.

The Commissioner also contends that the present action is barred by the doctrine of collateral estoppel—which bars a party from relitigating any issues in a new cause of action which were necessarily determined in a prior adjudication between the same parties or their privies.

Finally, the Commissioner argues that, even if the Court does not find that the doctrines of *res judicata* or collateral estoppel bar the instant action, it can be dismissed for failure to state a claim upon which relief can be granted. The plaintiffs are claiming, under the Fourteenth Amendment, that Tenn.Code Ann. § 49–6–3050(b)(7) is unconstitutional, as applied, because (1) the Commissioner has failed to promulgate regulations setting objective standards for waivers or statutory exemptions consistent with the State's interest in education and (2) the Commissioner has failed to provide any type of hearing or appeal mechanism for those whose requests for exemptions are denied. The Commissioner argues that, even if this is true, the statute does not require him to adopt any objective standards. He cites the

Tennessee Court of Appeals' decision in *Crites* for the proposition that he has no such obligation.

The Commissioner has interpreted the statute to express a legislative policy of requiring a baccalaureate degree or its equivalent, and is following that policy by granting no exception unless equivalency is shown. He has complied with the quoted statute, and the courts are not empowered to require him to do more in the way of defining equivalency. The equivalence of the qualification of the applicants must be decided on a case-by-case basis. Any review of the decisions of the Commissioner must be on a case-by-case basis, rather than by judicial dictation of the manner in which the Commissioner sees fit to implement the statute. *Crites v. Smith,* 826 S.W.2d 459, 464 (Tenn.App.1991).

In addition, the Commissioner argues that the plaintiffs have no basis for their claim that they are due a hearing on their requests for exemption from the baccalaureate degree requirement. The Fourteenth Amendment due process protections apply only to safe guard protectable interests or entitlement that a person has already acquired.

With regard to the plaintiffs' substantive due process claims that the baccalaureate degree requirement is unconstitutional on its face because it violates their "fundamental" due process right to direct the education of their children, the Commissioner contends that the law regulating the education of children is constitutional if it bears a rational relationship to some legitimate state purpose. Obviously the challenged requirement bears a rational relationship to the state's legitimate interest in the education of its children. The requirement for home school parent-teachers imposes only the most minimal burden on the parent's right to control the education of their children.

With regard to the plaintiff's First Amendment argument that the challenged regulation burdens their right to the free exercise of religion (they believe God requires them to personally teach their own children in an manner consistent with the Bible), the Commissioner argues that the law is a neutral law of general applicability that is not directed toward any religions practice. The burden it imposes on the plaintiffs is slight since their religion does not forbid them from obtaining a baccalaureate degree, or its equivalent, so that they will be qualified to teach their own children.

The plaintiffs respond that *Crites* lawsuit does not preclude the instant case on *res judicata* and collateral estoppel grounds because there are different parties involved in this case who are not in legal privity with the *Crites* plaintiffs. In *Crites,* the Commissioner took the position that he decided each application for a statutory exemption on a case-by-case basis. If this is true, each denial of a waiver gives rise to a separate cause of action and a decision binding one plaintiff cannot bind a subsequent plaintiff. This is unlike the situation in the *N.A.A.C.P.* case where both law suits involved a single decision to fly the Confederate flag. Moreover, they cite *Marx v. Cuomo,* 128 A.D.2d 965, 513 N.Y.S.2d 285 (1987), for the proposition that the use of the same attorney by different members of an organization bringing similar lawsuits does not establish privity unless the organization itself (in *Marx* it was a labor union) was a party to the prior proceeding. They also call the Court's attention to the Fifth Circuit case of *Pollard v. Cockrell,* 578 F.2d 1002 (5th Cir.1978), where "virtual representation" is defined as "an express or impled legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." 578 F.2d at 1008. They argue that the plaintiffs in the case at bar had no control over the *Crites* plaintiffs nor were those plaintiffs in any sense legally accountable to them.

With regard to the merits of the constitutional claims, they point out that under *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the "compelling state interest" test not the "rational relationship" test should be applied to cases involved the Free Exercise Clause of the First Amendment and parental rights under the Due Process Clause of the Fourteenth. And, even if the Court were to apply the lower reasonableness standard to their claim, it should evaluate their claims accord-

ing to a four-part test like the one suggested by the Eighth Circuit in *Salaam v. Lockhart*, 905 F.2d 1168 (8th Cir.1990). They also argue that their due process claim has merit because procedural due process presumes an impartial decision maker. The crux of their procedural claim is that Commissioner Smith is not such an impartial decision maker if all petitions for the statutory exemption are routinely denied.

The plaintiffs in this case have no constitutional right to provide their children with private education unfettered by reasonable government regulations. *See Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). And requiring home school teachers of high school children to possess a baccalaureate degree, or its equivalent, appears reasonably conceived to advance the State's legitimate interest in assuring that home school children are provided with a quality education. The Court does not believe that the plaintiffs have stated a first amendment claim or a substantive due process cause of action. On the other hand, the Court is confident that the plaintiffs have stated a procedural due process claim based upon the arbitrary manner in which the statutory exemption provision is handled. In the absence of objective standards for reviewing the merits of each individual application for a statutory exemption, and the absence of any appeal mechanism for those whose applications are turned down, the system as now administered appears to be fundamentally unfair. The very good discussion of the due process issue in the dissenting opinion of Court of Appeals Judge William C. Koch, Jr. in *Crites v. Smith*, 826 S.W.2d 459 (Tenn. App.1991), is recommended to the Commissioner for his consideration.

However, the Court need not reach these constitutional issues because it must agree with the Commissioner that this action, whether valid or not is, barred by the doctrine of *res judicata*. All the plaintiffs in this case and in *Crites* are members of the Home School Legal Defense Association and are represented by the same attorneys. As members of the association, they are all entitled to legal representation and all receive a newsletter, but, apparently, have no voting privileges or control over the organization. The presence of Paul and Claudia Williams in both cases suggests that this lawsuit is simply another attempt by the organization to attack the Tennessee home schooling regulations in a different forum. Nothing in the pleadings in either lawsuit indicates that the plaintiffs are making *individualized* claims upon different sets of facts. While the voluntary dismissal of the Williamses from the instant case means that there are, in fact, no parties in common between this action and the *Crites* lawsuit, this appears to be an excellent case for the application of the doctrine of "virtual representation." There is no question that the *Crites* plaintiffs, in attempting to obtain class certification, stood as the virtual representatives of all similarly situated home-schooling parents. The *Crites* case was fully tried and appealed all the way to the Tennessee Supreme Court. There is no question that the claims of the parties in this action were well represented in the former one. Had the *Crites* plaintiffs prevailed, the injunctive relief they sought would have applied to the plaintiffs in the instant case as well as to all similarly situated home schooling parents in Tennessee.

Accordingly, the Commissioner's motion is hereby GRANTED and this action is DISMISSED.